**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14130

Non-Argument Calendar

————————————

BRANDON MUNDT,

*Plaintiff-Appellant,*

*versus*

SHERIFF, OKALOOSA COUNTY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:24-cv-00082-TKW-ZCB

————————————

Before LUCK, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Brandon Mundt appeals the entry of summary judgment for the Sheriff of Okaloosa County on Mundt's claim of employment discrimination under the Americans with Disabilities Act of 1990

("ADA"), Pub. L. No. 101-336, 104 Stat. 327.  The district court held that Mundt had not established the prima facie case for his discrimination claim, because Mundt had failed to substantiate that he was a "qualified individual" under the ADA and that the Sheriff unlawfully discriminated against Mundt on the basis of his disability.  After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual Background

Appellant Brandon Mundt worked for the Okaloosa County Sheriff's Department (the "Department") for the better half of a decade.  In 2015, Mundt was involved in a car accident while working on-duty as a patrol deputy.  Mundt did not immediately sustain any serious injuries in the accident and quickly returned to work.  Mundt then rose through the ranks of the Department and, in June 2022, became an investigator in the Special Victims Unit of the General Investigations Division.

Soon after receiving the promotion, Mundt began experiencing severe back pain, which he believed was directly attributable to his 2015 car accident.  Mundt sought medical treatment, and x-rays indicated trauma to his spine.  Mundt submitted a work status report to the Department.  In it, his physician recommended that Mundt could return to work on June 15 and advised that Mundt was restricted from partaking in several activities—he could not balance, bend, carry, or climb; run after suspects on foot, engage in violence and physical confrontations, or physically secure a resisting individual; or, in his doctor's medical opinion, otherwise

perform the essential functions of a law enforcement officer.  Because Mundt could not perform the essential functions of his job, he was placed on leave under the Family and Medical Leave Act ("FMLA"), Pub. L. No. 103-3, 107 Stat. 6 (1993).  Mundt was later physically cleared and returned to work on July 14.

Unfortunately, Mundt continued to experience progressively severe back problems.  In October 2022, Mundt began seeing Dr. Brandon Cook, who recommended that Mundt undergo back surgery.  Mundt informed his supervisors at the Department of his surgery and was approved to take a leave of absence from December 1, 2022, until January 28, 2023, at which point Mundt would have exhausted his remaining FMLA leave.  The Department informed Mundt that his "failure to return to duty after [his FMLA leave] has been exhausted may be treated as a resignation unless proper notification has been received" and apprised him that he could "apply for any open position" for which he was qualified if he was ultimately "unable to return to full duty" as an investigator.

Mundt had his surgery on December 1.  A week later, Callie Wilson—Dr. Cook's physician assistant—examined Mundt and recommended that he undergo additional surgery, which Mundt did on December 14.  Mundt had a follow-up visit with PA Wilson on January 5, 2023.  According to PA Wilson's notes from that examination, Mundt's pain was "much better," though PA Wilson thought that Mundt was not yet ready to perform the Department's physical abilities test ("PAT"), which Mundt would have to complete upon returning to duty.  PA Wilson gave Mundt a

"tentative return to work date" of March 14, which Mundt relayed to his supervisors. That same day, Major Shannon Tait, one of Mundt's supervisors, reached out to Mundt to see how he was feeling and asked whether he was interested in an opportunity to take a non-sworn position as a dispatcher while he awaited medical clearance. Tait told Mundt that she had talked to the undersheriff about Mundt's situation and conveyed that the undersheriff "would absolutely support" Mundt taking on that role in the interim. Mundt told Tait that he "appreciate[d] it" but did not give her an answer one way or the other.

On February 8, the Department emailed Mundt, requesting an updated work status report and informing him that his FMLA leave was now exhausted. Mundt forwarded the Department an updated report from PA Wilson—where she reiterated that she "[e]xpect[ed]" Mundt to be able to work "with no restriction" on March 14—and submitted a formal request to extend his leave. The Department sent a follow-up letter to Dr. Cook asking whether Mundt could perform his essential job functions and, if not, when he could do so without restrictions. Dr. Cook answered, "No, likely 3/14/23."

Eight days later, Tait informed Mundt that he needed to decide by February 20 whether to "resign and apply for a nonsworn position or face termination." Mundt also had a medical appointment on February 16, at which he told PA Wilson that he "was doing much better." The next day, Tait emailed Mundt to follow up on their phone call. She again expressed that the Department

"would be more than happy to extend [Mundt] a non-sworn position in hopes that" Mundt could return to his investigator role once he was medically cleared. Mundt responded by renewing the request that his leave be extended until his "likely return date of March 14."

On the morning of February 20, Tait told Mundt that the Department "researched" his renewed request but his options "remained the same." Tait gave Mundt until 10:00 AM to decide whether he would apply to transfer to a non-sworn position or resign. Mundt did not respond to that email. Two days later, Mundt received a letter from the Department informing him that his employment had been terminated.

Mundt continued to attend his medical appointments following termination. On March 7, Mundt was examined by PA Wilson, who, Mundt says, "cleared him to return to work without restrictions." According to Mundt, he "was still experiencing some minor intermittent pain at this time," but he did not find this pain "debilitati[ng]" or believe it would have prevented him from successfully performing his required duties as an investigator. But PA Wilson's notes from this appointment indicate Mundt reported he was "still having quite a bit of leg pain" and that she continued to believe he was not yet ready to complete the PAT. Dr. Cook reached a similar conclusion following a June 5 appointment. And after a September 5 visit, Dr. Cook noted that Mundt's intermittent leg pain had "gotten slowly worse."

### B.    Procedural History

On December 26, 2023, Mundt sued Sheriff of Okaloosa County Eric Aden in his official capacity (the "Sheriff") in Florida state court, alleging claims under the ADA, FMLA, Florida Civil Rights Act ("FCRA"), and Florida Workers' Compensation Law. The Sheriff removed the case to the U.S. District Court for the Northern District of Florida and, following discovery, moved for summary judgment.

The district court granted the Sheriff's motion and entered summary judgment for the Sheriff on all counts.[1]  On the ADA claim, the district court held that Mundt could not establish the prima facie case for discrimination because no reasonable juror could find that Mundt would have been able "to perform the essential functions of his job" by March 14, 2023.  The district court also concluded that Mundt's FMLA and FCRA retaliation claims failed as a matter of law because Mundt could not show a causal link between his termination and his protected activity of taking leave.  Mundt timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).  Summary judgment is appropriate when a movant shows that there is "no genuine dispute

---

[1] Mundt did not respond to the Sheriff's motion as it related to the Florida Workers' Compensation claim, so the district court deemed this count abandoned.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

### III.    ANALYSIS

Mundt only appeals the entry of summary judgment for the Sheriff on the ADA discrimination claim.[2] The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish the prima facie case for employment discrimination under the ADA, a plaintiff must show that (1) he has a disability, (2) he is a qualified individual, and (3) the defendant unlawfully discriminated against him because of the disability. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000); *see also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1154 n.8 (11th Cir. 2005) (explaining that "all the components of the prima facie case are also elements of the claim itself").[3]

The district court held that Mundt failed to make out the prima facie case of his discrimination claim because no reasonable

---

[2] Mundt has thus abandoned his other claims on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014) ("[I]t is well settled in this circuit that a party abandons an issue 'by failing to list or otherwise state it as an issue on appeal.'" (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012))).

[3] The Sheriff does not dispute that Mundt suffers from a covered disability.

juror could find that Mundt was a "qualified individual" under the ADA or that his firing constituted unlawful discrimination.  We take each element in turn.

### A.    The "Qualified Individual" Element

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  To prevail on an ADA discrimination claim, "a plaintiff must plead and prove that [he] held or desired a job, and could perform its essential functions with or without reasonable accommodation, at the time of an employer's alleged act of disability-based discrimination."  *Stanley v. City of Sanford*, 606 U.S. ___, 145 S. Ct. 2058, 2071 (2025); *see Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007).

The parties agree that Mundt "needed to receive medical clearance" and "complete the PAT" in order to return to his post as a sworn law-enforcement officer.  But they hotly dispute whether Mundt would have been able to meet those essential functions of the job by his requested return date of March 14.

For his part, Mundt affirmed in a sworn affidavit that PA Wilson "saw [him] and cleared [him] to return to work without restrictions" on March 7.  Mundt also explained in his deposition that, although he "was still experiencing some minor intermittent pain" by then, that pain "was not debilitating" and "would not have prevented" him from performing any of his duties as an investigator. The Sheriff counters with substantial evidence pertaining to

Mundt's medical history, including records indicating that Mundt told PA Wilson at the March 7 appointment that "his legs give out on him" and that Mundt continued to complain to his doctors that his pain was "more or less unchanged" for several months later. Dr. Cook also testified that he was not "aware" of ever giving Mundt clearance to return to work.

Notwithstanding the parties' conflicting evidence on Mundt's ability to return to work by March 14, the district court determined that Mundt's "self-serving" testimony was definitively "refuted" by the Sheriff's evidence such that "no reasonable jury would find that [Mundt] was released to return to unrestricted duty as of March 14." This was error.

In reviewing a motion for summary judgment, a court cannot "weigh conflicting evidence or determine the credibility of witnesses." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012); *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007)). So long as the non-movant offers competent evidence which, viewed in the light most favorable to him, would allow a reasonable jury to find in his favor on that issue at trial, the court must deny summary judgment on that issue. *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc). That a party's evidence "consists . . . solely of [his] own self-serving sworn statements or testimony" does not necessarily mean such evidence "can[not] create a genuine dispute of material fact." *Blanco v.*

*Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024) (internal quotation marks omitted); *see also Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). Rather, the court must accept "a party's testimony on summary judgment 'unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Blanco*, 91 F.4th at 1070 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

For a plaintiff's self-serving testimony to be sufficiently contradicted such that it may be ignored, it must be so "utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372 (2007). Our Circuit has been reluctant to apply this exception beyond instances "where a *videotape* of the incident definitively established what happened and what did not." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (emphasis added); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible. Unfortunately for [the defendant], he does not offer a video recording of the incident."). Moreover, we have affirmatively rejected the argument that one party's "documentary and medical evidence" is sufficient to nullify the other's self-serving testimony at summary judgment. *Sears*, 922 F.3d at 1208.

Here, the medical records simply "pit the [doctors'] word against [Mundt's] word." *Id.* Resolving that credibility dispute poses a textbook jury issue. *See Feliciano*, 707 F.3d at 1253. In concluding that the Sheriff's evidence "directly"—and definitively—"refuted" Mundt's testimony, the district court impermissibly assumed the accuracy of the records and weighed the doctors' credibility against Mundt's. *See A.L.*, 900 F.3d at 1289; *see also Sears*, 922 F.3d at 1208 n.4 ("[W]hether the log is accurate . . . is an[ ] issue for the jury to resolve."). It could very well be the case that a jury ultimately would not believe Mundt at trial—but that decision still must be left to the jury. *See Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Put simply, a district court may cannot preemptively usurp the jury's fact-finding role at summary judgment.

Because Mundt has introduced some competent evidence demonstrating that he was "cleared" to return to work before March 14 and that his physical condition "would not have prevented" him from completing the PAT, he has created a genuine dispute of fact as to whether he is a "qualified individual" under the ADA. So this element of the prima facie case cannot serve as the basis for summary judgment in favor of the Sheriff. Still, Mundt can only proceed to trial on his ADA claim if he has also substantiated that the Sheriff "unlawfully discriminated against him because of [his] disability." *Reed*, 206 F.3d at 1061. We consider that element next.

### B.　　The "Unlawful Discrimination" Element

An employer unlawfully discriminates against a qualified individual on the basis of disability when the employer fails to make "reasonable accommodations" for a disabled individual—unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation" of its business. 42 U.S.C. § 12112(b)(5)(A); *see Holly*, 492 F.3d at 1262. The plaintiff bears the initial burden "of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job" and of "showing that such accommodation is reasonable." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). If the plaintiff establishes that he was denied reasonable accommodation, the burden shifts to the "employer . . . to show undue hardship." *Id.*

Mundt asserts that the Sheriff failed to provide him a reasonable accommodation because the Sheriff denied his requests for extended leave until March 14, 2023. The district court rejected this argument on the ground that Mundt purportedly introduced no competent evidence suggesting that he would have been able "to perform the essential functions of his job" by that date. As we explained, that was incorrect. But we may "affirm for any reason supported by the record, even if not relied upon by the district court." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1294 (11th Cir. 2007). And we are nonetheless satisfied that no reasonable juror, upon taking the evidence in the light most favorable to Mundt, could conclude that Mundt was denied a reasonable accommodation.

24-14130              Opinion of the Court              13

Although Mundt requested further leave, the ADA does not require that an employer "accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Rather, an employer meets its obligations under the ADA as long as it provides *some* reasonable accommodation, regardless of whether it is "the accommodation of [the employee's] choice." *Id.* at 1286 (citation omitted).

Here, the Sheriff was willing to allow Mundt to work in a different job while he recovered from his injuries. While Mundt was still on FMLA leave, Tait presented Mundt with an "opportunity" to take a non-sworn position, a transfer his supervisors "would absolutely support." Tait reiterated that offer once Mundt's FMLA leave expired, expressing the Department "would be more than happy to extend [Mundt] a non-sworn position." And only two days before he was terminated, Tait again told Mundt that he could take a non-sworn position as an alternative to resignation.

The ADA expressly recognizes that "reassignment to a vacant position" is among the reasonable accommodations available to an employer. 42 U.S.C. § 12111(9)(B). As we have explained in the comparable context of Title VII,[4] an employer can meet its obligation to provide a reasonable accommodation by "encourag[ing]

---

[4] "[W]e analyze ADA-discrimination claims under the same framework as Title VII . . . discrimination claims . . . [and] often cite case law under [these] statutes interchangeably." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 n.7 (11th Cir. 2021).

its employee to seek another position with the company and provid[ing] assistance in that search." *Walden v. Ctrs. For Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015); *see Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1324 (11th Cir. 2007) (finding obligation met where employer "encouraged" employee to apply for other positions and facilitated interview process).

So too here. By apprising Mundt of the open dispatcher role, telling him the Department "would absolutely support" the transfer, and ultimately affirming that the Department "would be more than happy to extend" that job to Mundt, the Sheriff (through Tait) complied with his obligations under the ADA to offer a reasonable accommodation. It is of no matter that Mundt would have needed to "reapply" for this position or that Mundt considered it a "demotion." An employer need not guarantee that the employee's application to the new role is "successful," *Morrissette-Brown*, 506 F.3d at 1324; *see Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 344–45 (7th Cir. 1996), and the mere fact that a proposed accommodation "may involve some cost to the employee" does not make that accommodation unreasonable, *Morrissette-Brown*, 506 F.3d at 1324 n.6 (collecting cases); *see also Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) ("[A]n employer's obligation to reassign an employee may include an assignment to a position with a lower grade of pay if the employee meets the job's qualifications."). Mundt offers no evidence suggesting otherwise.

The Sheriff offered, and Mundt declined, the reasonable accommodation of working in another role while Mundt recovered from his injuries.  Although Mundt was not required to accept that accommodation, his failure to do so places him outside the protections of the ADA.  *See Schmidt*, 89 F.3d at 344–45 (citing 29 C.F.R. § 1630.9(d)).  We thus conclude that Mundt's ADA discrimination claim fails as a matter of law.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's entry of summary judgment for the Sheriff of Okaloosa County.

**AFFIRMED**.